[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to the court by virtue of a summons and complaint initiated by the plaintiff petitioner wife, which CT Page 2710 complaint was dated October 20, 1998 and returnable November 24, 1998, and in which complaint the plaintiff sought a dissolution of the marriage, alimony, an equitable property settlement and assignment of the defendant's estate in and to the jointly owned real estate located at 28 Meadow Wood Drive, North Stonington, Connecticut, an allowance to prosecute, allocation of debt, and other equitable relief as the court deems appropriate.
The usual automatic orders accompanied the complaint.
Accompanying the complaint was a motion for alimony and allowance to prosecute pendente lite, an allocation of debts pendente lite, a motion for exclusive use and possession of family residence pendente lite.
Also accompanying the complaint was a copy of the lis pendens filed on the North Stonington land records.
The defendant appeared by counsel on December 10, 1998.
On December 16, 1998 the defendant filed a financial affidavit and on December 14, 1998 an agreement by and between the parties and their counsel was filed whereby the defendant would pay temporary alimony in the amount of $250.00 a week, that the defendant would reimburse the plaintiff for all medical bills submitted by the plaintiff through the insurance as soon as he receives them, and that the defendant shall have exclusive use and possession of the marital home at 28 Meadow Wood Drive, North Stonington. The defendant to continue to pay the mortgage, taxes and related expenses thereon.
On December 16, 1998 the plaintiff filed her financial affidavit.
On December 14, 1998 the defendant filed an answer and a cross complaint and in the cross complaint asked for a dissolution of the marriage, an equitable division of the parties' assets and liabilities, and such other equitable relief as the court may deem fit.
On June 3, 1999 a motion to modify alimony pendente lite was filed but the motion apparently was never acted upon.
On February 8, 2000 the plaintiff and the defendant with their respective counsel appeared before the court and the matter was CT Page 2711 heard to a conclusion.
The Court makes the following findings of fact.
The plaintiff Carolyn J. Ryder is now age 52. She was born in New London, Connecticut.
The plaintiff attended Fitch Junior High School in this area and later attended at Kings College in New York for one year.
The plaintiff and the defendant were joined in marriage at Groton in this State on June 29, 1968.
There were three children issue of this marriage who are now all grown up adults. The children's ages being 26, 23 and 18.
The marriage between the plaintiff and the defendant has irretrievably broken down with no reasonable prospect for reconciliation.
No other children have been born to the plaintiff wife from the date of the marriage to the present time other than those noted above.
Neither of the parties has been the recipient of State aid or welfare nor have they received any assistance from any town, city or municipality.
The plaintiff and the defendant resided in North Stonington for 23 years.
The plaintiff has a health problem, asthma, where a portion of her airway is obstructed. The plaintiff attributes this condition to work conditions that existed years ago when she was involved in banking.
In addition, the plaintiff has a thyroid condition and a hiatal hernia. The plaintiff takes medication at this time including Synthroid and Prilosec. See Plaintiff's Exhibit 8, pharmacist's statement, showing the various types of medication used by the plaintiff for what appears to be the year 1999. The medications listed on this exhibit include Prozac, Singulair, Ventolin, Prilosec, Azmacort, Ibuprofen, Hydrochlorothiazide, Biaxin, and other medications. CT Page 2712
The cost to the plaintiff for the medication during what appears to be calendar 1999 was to the amount of $3,331.03. Of this amount, however, 90% of the cost was covered by existing outstanding insurance.
The plaintiff hopes to secure a position in the near term which will provide benefits that will cover her prescriptive needs in the future.
The plaintiff presently is unemployed.
The marital residence of the parties located at 28 Meadow Wood Drive in North Stonington is a split-level residence situated on one-half acre of land with a one-car garage. The now adult children noted above were raised there. The plaintiff has engaged in various gardening pursuits at that location and testified that she has lots of memories with regard to the residence and is desirous of keeping and maintaining the home.
The plaintiff testified that in her opinion the value of the home at 28 Meadow Wood Drive is to the amount of $121,000.00.
There are two mortgages encumbering the property. The first mortgage is with First Union Mortgage Company and the second mortgage with Home Loan Investment Company.
The purpose initially of taking the second mortgage was to assist the defendant in buying into a business known as Snap On Tools.
The plaintiff testified that the balance of the first mortgage now is approximately $5,000.00 and that the balance on the second mortgage now is $14,872.38.
The plaintiff testified that she has been currently paying the mortgages since October of 1998.
The defendant apparently vacated the premises in September of 1998.
Some portions of the home apparently are in some state of disrepair. The plaintiff testified that the premises need new storm windows, that there are leaks in the foundation, that there are other windows that need to be replaced. CT Page 2713
The plaintiff testified that recently a new furnace was installed in the residence at a cost of $2,100.00.
The plaintiff, for transportation, has a 1988 Chevrolet Corsica valued at $250.00. She indicates that her vehicle is in need of repairs.
The defendant owns a 1988 Honda Gold Wing Motorcycle, which is valued on his financial affidavit at $5,000.00.
The plaintiff was age 20 at the time of the marriage between the parties. She had her first child at age 25.
During the initial five-year period of the marriage the plaintiff worked for various banking institutions in the area. In addition, the plaintiff worked at McDonald's while the children were growing up. The plaintiff worked for Burger King in the evening. The plaintiff resorted to providing childcare for others in her home. The plaintiff was employed at Eastern Savings and Loan Bank for a period of five years. The plaintiff worked as a teacher's aide in 1996 and that was a full-time job until November of 1999.
The plaintiff testified that she left that position in seek of better pay.
The plaintiff then secured a job at Pfizer's at $9.50 an hour for 40 hours.
The plaintiff testified that she left this position because the job was extremely boring.
The plaintiff is now looking for a new position in banking and indicated that one of her most important concerns is the benefits attendant to a new position.
The plaintiff testified that problems first developed in the marriage 14 or 15 years ago, that by and large the problems usually centered around financial problems.
The plaintiff testified that on at least three occasions during the life of the marriage that the first mortgagee bank threatened foreclosure on the home premises.
On three separate occasions during the life of the marriage the CT Page 2714 plaintiff sought counseling. The last counseling that she participated was in the years 1997-1998, and as indicated earlier, the defendant moved out of the marital residence in October of 1998.
The position that the plaintiff formerly held briefly at Pfizer's was for only two months and her duties included being on a computer for eight hours a day.
One of the plaintiff's and defendant's children reside with the plaintiff in the home and residence of the parties. This child who resides there with his family pays the plaintiff $300.00 a month; this either to assist with regard to the expenses attendant to the real estate or to repay a loan made by the plaintiff to her son in May of 1998.
The plaintiff testified that the repayments from her son are sporadic.
The original loan that she made to the son was approximately $3,000.00; the son in need of funds for securing, at that time, an apartment in Rhode Island and certain motor vehicle tickets.
In April of 1998 the plaintiff received $20,000.00 from a worker's compensation claim.
The plaintiff used those funds in purchasing a bedroom set for her daughter and also put funds into a cash management account.
The plaintiff also used a portion of the funds to pay for ongoing living expenses.
The plaintiff testified that there is no remaining portion of the $20,000.00 received from the worker's compensation claim at the present time.
The plaintiff testified that problems pertaining to her condition of asthma or pulmonary problems are not stable and that the medication and/or treatment is ongoing.
The plaintiff testified that her thyroid condition is now under control and that the medication Prozac she takes for a condition of depression.
The defendant has worked at Pfizer's over pretty much the CT Page 2715 entire length of the marriage and works on an overtime basis regularly. His title is that of a rounds mechanic.
The plaintiff testified that the defendant has been current with regard to complying with any prior orders of support as far as alimony payments are concerned and that there is no arrearage.
The plaintiff indicated that those with whom she has been medically treating have indicated that she has a 50% chance of developing emphysema. This apparently an opinion from Dr. Urbanetti; however; the plaintiff acknowledged that the medical practitioners had indicated that she still is capable of being employed.
The plaintiff testified that she felt that the marriage after all these years was no longer a partnership and that the defendant did not show any appreciation for what she had done over the years.
The defendant Kenyon J. Ryder is age 54.
He has resided in various geographical locations while growing up. His father was a chemical engineer.
The defendant left high school in his junior year and joined the U.S. Coast Guard. He has been at Pfizer's as a rounds mechanic for many years.
The defendant's opinion with regard to the value of the marital real estate was to the amount of $130,000.00. He also valued the Gold Wing motorcycle at $5,000.00.
Counsel for the defendant stipulated during the course of the proceedings to the fact that the defendant has, pursuant to stock options, 3,000 shares of Pfizer, which as of November 30, 1999 were valued at $125,304.50.
The debts shown on the defendant's financial affidavit amounting to $46,982.57; he represents are solely his debts and obligation.
The defendant testified as to making renovations and improvements to the marital home over the years including a new kitchen, an atrium door, ceilings being refinished, a new roof on the residence, a new bathroom and indicated that approximately CT Page 2716 $30,000.00 had been spent in making these renovations.
The defendant testified that for reasons apparently good and sufficient to himself that he had to leave the home and residence and indicated that he had made sure that all financial obligations were current as of the date of his departure.
The defendant testified that he believed that he participated in successfully raising up the three adult children and that at his present age he feels a considerable strain of being required to work seven days a week incident to his position with Pfizer.
The business that was referred to above that the defendant undertook to set up involving an organization known as Snap On Tools was unsuccessful. The defendant testified that the demands of the business were too demanding and that it became too much of a burden.
The defendant testified he has always been employed during the marriage and feels that the plaintiff is capable of participating in the employment workplace.
On the basis of the testimony, it appears that there have not been any instances of physical violence in this admittedly long marriage. No problems pertaining to the immoderate use of alcohol or substance abuse. It appears that the parties merely drifted apart and that there was no common ground or bond between them after the expiration of many years.
The husband's formal education extended only through an equivalency diploma at a high school level.
This was the first marriage for both of the parties.
From the financial affidavits the Court finds that at the moment the only income to the plaintiff is the alimony payment of $250.00 a week.
Her net weekly income is $202.50; weekly expenses, $510.93. Debts reflected on her affidavit amount to $7,730.00.
As indicated, she values the 28 Meadow Wood Drive residence at $120,000.00 with total mortgage indebtedness of $21,000.00 for a total equity as to both of the parties of $99,000.00. CT Page 2717
Her 1988 Chevrolet Corsica is valued at $250.00 free and clear, jewelry, furnishings valued at $8,300.00; $132.00 in a credit union account and the balance of a debt due to her from her son in the amount of $3,795.00.
The defendant's financial affidavit reflects weekly gross income from his employment at Pfizer's, $1,211.00; net after deductions of $489.00, which include taxes, medicare, medical, dental and life insurance of $489.00 for a net of $722.00.
The defendant shows his weekly expenses at $390.00. His debt is $46,982.57. As indicated he values the 28 Meadow Wood property at $130,000.00 with a mortgage of $20,000.00. He has a 1992 Buick automobile valued at $4,000.00 on which $3,500.00 is due.
As earlier indicated, he valued the motorcycle at $5,000.00 and from Schedule C on his financial affidavit, his SSIP as of November 30, 1999 is valued at $125,304.50, two loans against the same of $17,900.00, for a net total SSIP of $107,404.50.
See Plaintiff's Exhibit 2C for an explanation as to the manner in which the defendant's compensation is computed including the figures assigned to his base pay, vacation, company, holiday, United Way, overtime, Sunday premium, third-shift premium, disability, jury duty and long SVC bonus. The total appears to be for 1999, $89,004.25.
See Plaintiff's Exhibit 1, Statement from the Office of Assessor, North Stonington, indicating that the total appraised value is $121,000.00 and the assessed value is $84,700.00. This on the current assessment valuation.
See Plaintiff's Exhibit 2A, W-2 for 1999 as concerns the plaintiff indicating wages from the North Stonington Bureau of Education to the plaintiff, $6,551.07.
In 1999 see also W-2 on the same exhibit, income to the plaintiff from Manpower, Inc. in the amount of $1,496.25.
See Plaintiff's Exhibit 4 as concerns the year 2000 COBRA rates, which would be an expense to be incurred by the plaintiff from and after a dissolution of the marriage in order for her to secure certain medical and dental benefits.
See Plaintiff's Exhibit 2B, 1998 W-2 as concerns the defendant CT Page 2718 showing total wages as $73,608.17.
See Plaintiff's Exhibit 3B entitled "The Pfizer Stock and Incentive Plan Status Notice," indicating total non-vested options $921.00, cost to exercise $35,515.41.
See Plaintiff's Exhibit 3, Statement from Pfizer's, indicating that the gross annuity per year, the same being a preliminary estimate of his Pfizer retirement annuity plan benefits would be to the amount of $11,112.00 per year.
See Plaintiff's Exhibit 6, a page from the NADA motorcycle valuation schedule indicating the value of the motorcycle referred to in the defendant's financial affidavit as $5,715.00.
See also Defendant's Exhibit A as concerns those items of personal property which the defendant is desirous of retrieving from the home and residence.
 Discussion
This is a marriage of 31 years. The plaintiff, as indicated, is now 52 and the defendant is age 54.
The parties had three children, all of whom are grown and are now adult citizens.
The parties appear to have just drifted, apart mindful of the Court's earlier observation of no physical violence and no abuse as to alcohol or drugs.
The defendant has apparently worked steadily all during the marriage aside from his service with the Coast Guard and presently is working for Pfizer on a seven-day a week basis and has been for some time. This has allowed for a substantial increase in what his earnings are. How long he may be able to maintain this pace is a matter of conjecture.
The plaintiff has manifestly some health problems. No detailed medical statements were submitted as exhibits nor was any medical testimony provided to the Court in trying to assess the depth of the severity of the plaintiff's medical situation.
The principal asset of the parties is the home and the admittedly substantial equity therein and the plan which the CT Page 2719 defendant has accumulated incident to his work at Pfizer's.
 The Law
The Court has considered all of the statutes which apply in matters of this nature including C.G.S. § 46b-82 regarding alimony.
The Court has considered all of the applicable case law that governs the matter.
The Court has considered the testimony of all witnesses, their candor or lack thereof, and all exhibits and the arguments of counsel.
The Court has considered the length of the marriage, the problems with which it was beset, the age, health, station, occupation, employability, estate and the needs of the parties based on what is available to the Court.
The Court has considered the standard of living of the parties as best it can and the present financial situation that exists.
The Court enters the following orders.
As to the real estate jointly owned by the parties situated at 28 Meadow Wood Drive and mindful of the valuations placed thereon by the parties, to wit $120,000.00 by the plaintiff and $130,000.00 by the defendant, and mindful of the mortgage indebtedness on the property of approximately $21,000.00, the Court directs that the defendant shall convey all of his right, title and interest in and to said real estate to the plaintiff The plaintiff is to hold the defendant harmless with regard to the remaining balance due on the first mortgage of approximately $5,000.00 and the balance due on the second mortgage of approximately $14,872.38.
The plaintiff then will have an equity in this property of approximately $100,000.00 to $110,000.00 depending on the value accepted by the Court. The Court notes that there was no appraisal by any broker or appraiser that was offered to the Court independently establishing the value of the property.
The defendant shall pay the plaintiff the sum of $225.00 a week as periodic alimony for a period of 13 years. This bringing the CT Page 2720 plaintiff to retirement age. The alimony to be non-modifiable as to term but not as to amount. The alimony to terminate earlier upon the plaintiff's death, remarriage or cohabitation as provided for under the statute.
The defendant shall cooperate with the plaintiff in assisting the plaintiff to secure benefits under COBRA as to insurance coverage for herself for the period of three years. The defendant to be responsible for one-half of the cost thereof
The plaintiff shall be entitled to the sum of $20,000.00 from the defendant's SSIP. The plaintiff is to have and obtain by way of Qualified Domestic Relations Order one-half of the pension which the defendant has through his employment at Pfizer's, as of the date hereof.
The defendant may retain his stock options and the remaining portion of his SSIP after the setting aside of $20,000.00 as earlier noted.
The defendant may have those items shown on Defendant's Exhibit A; to wit, a snowthrower, a rototiller, a table saw, an FR72 ratchet model plane, shelf of wood and an Eagle picture.
Each of the parties shall be responsible for their own attorney's fees.
The Court grants the relief prayed for and dissolves the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried.
Austin, J.